## Hieatt Bros., Incorporated v. Kirwan.

(Decided June 5, 1925.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Third Division).

1. Brokers—Relationship of Principal and Agent Between Plaintiff Seller and Defendant and Broker Held Not to Exist.—Relationship of principal and agent held not to exist between plaintiff and defendant, so as to permit recovery of difference between amount for which plaintiff sold house to defendant's alleged agent, and amount for which he resold it.

2. Brokers—Not Liable for False Representations to Owner as to Price Offered, in Absence of Fiduciary Relationship or Fraud Preventing Inquiry.—Real estate broker, not acting as owner's agent, but buying property in his own name and then reselling, is not liable for false representations to owner as to price offered for property, in absence of fraud preventing inquiry or investigation by owner.

DAVID R. CASTLEMAN and J. J. HANCOCK for appellant.

S. J. BOLDRICK and BOLDRICK & GOCKE for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Reversing.

Appellant is a corporation engaged in the real estate business in Louisville. Appellee is a property owner in Louisville, and in the summer of 1921 listed for sale with appellant in the regular way, at a fixed price, some property owned by him on Jacob street, giving to appellant an exclusive agency for a definite period.

No sale having been made, in November, 1921, after the expiration of the term of exclusive agency, appellee by writing directed to appellant withdrew the property from the market, but said he might put the property on the market again next year,

"in which event I will probably call on you again."

Early in August, 1922, M. F. Morgan having in mind the purchase of some property saw a sign on a house at Fifteenth and Jefferson streets, with an advertisement on it "For Sale by Hieatt Bros." On the 5th of August Morgan went to the office of Hieatt Bros. and inquired about this property, and was sent by that firm to look at the same in company with one of their employes or salesmen, Harmon. They looked at that property and no other on that day; and on the 9th Harmon took him to look at appellee's property on Jacob street, although he knew it had been withdrawn from the hands of Hieatt Bros. There Harmon told Mrs. Kirwan, Kirwan not being at home, that he was Harmon from Hieatt Bros., and asked permission to show the property to Morgan. Permission being granted, they looked over the property and Harmon told Morgan that the property had been listed at $8,500.00, whereupon Morgan said the price was too high, and Morgan and Harmon separated without reaching any agreement as to any property. That night Harmon again went to Kirwan's home and found him there, and as they had never met before Harmon told him his name and that he was from Hieatt Bros.; that he had that day shown the property to a prospective purchaser, and asked him if he would make a price upon it, whereupon Kirwan expressly declined to fix any price, and told Harmon in substance that his firm had had the property in their hands for some time

with a price on it and had effected no sale. And when Harmon persisted Kirwan again said to him:

"It's no use to talk money to me now; bring me a written proposition and I will tell you whether or not I will accept it."

Then on the 12th of August, 1922, Harmon in his own name presented a written proposition to Kirwan saying he was authorized to offer $6,500.00 for the property, and on that day Kirwan and his wife in writing accepted that proposition, appending to their written acceptance this language:

"It being understood by all concerned that the amount named is net and not subject to any commission."

Thereafter on the 21st of August, Kirwan and his wife receipted to Harmon for a $100.00 cash payment on the property, and provided therein that the remaining $6,400.00 was to be paid on or before October 5, 1922, which latter stipulation Harmon, in his own name, accepted in writing.

In all these writings between Kirwan and Harmon, Harmon's individual name alone appeared in the papers. The written proposition was signed C. M. Harmon, the receipt which Kirwan and wife executed for the $100.00 is recited to have been received from C. M. Harmon, and the check given to them for that $100.00 was signed C. M. Harmon, and the only times the name of appellant was called was when he introduced himself as C. M. Harmon from Hieatt Bros.

Then on the 21st of August Harmon, in his own name, entered into a contract of sale with Morgan, whereby he sold him the property for $8,500.00. And then on the 2nd of October Kirwan, Morgan and Harmon completed the transaction by Kirwan conveying the property to Morgan and getting his $6,400.00 and Harmon received the balance of the purchase price paid by Morgan in the form of certain obligations.

This is an action at law by Kirwan against Hieatt Bros., incorporated, wherein he alleges that he listed his said property with the defendant for sale early in August, 1922, and that defendant through its agent and servant, Harmon, at the time falsely represented to plaintiff that he was unable to obtain more than $6,500.00

for said property, when as a matter of fact the defendant, through Harmon, had secured an offer of $8,500.00 for the same, and fraudulently concealed that fact from the plaintiff; and that plaintiff relying upon the representations of Harmon sold and conveyed the property to the purchaser for the sum of $6,500.00, although the said purchaser really paid to defendant, plaintiff's agent, the sum of $8,500.00 therefor, and prayed judgment for the $2,000.00.

The answer was a traverse of the material allegations, and upon a trial there was a verdict for the plaintiff for the $2,000.00 less a 5% commission.

The only question necessary to consider upon this appeal, and the only one considered, is whether defendant was entitled to the directed verdict for which it asked.

As averred in his pleading and disclosed by Kirwan's own testimony, the plaintiff's sole reliance for establishing the relationship of principal and agent between him and appellant is that Harmon being the agent of appellant entered into a contract with plaintiff in the conversation between them on the 9th of August at his home, which was equivalent to a re-listing of his property with defendant for sale, whereby it became plaintiff's agent for that purpose. It seems to be conceded, and manifestly is true, that if that conversation was not in effect a re-listing of plaintiff's property with defendant, the relationship of principal and agent between them was not re-established, and therefore the plaintiff cannot recover.

Taking the plaintiff's own evidence and the writings introduced, it is clear that relationship was not then created. In the first place the acceptance by Kirwan and his wife of Harmon's proposition, wherein it is recited that he is not to be liable for any commissions is wholly inconsistent with the claim that the relationship of principal and agent existed between the parties. Kirwan knew that appellant was engaged in the real estate business as an occupation and it is little short of absurd to say that he then could have believed or understood he was relisting his property with it for sale, and that it was to get no compensation. Not only so, in his own evidence when specifically asked when and how and through whom he had again placed the property in the hands of Hieatt Bros. he answered, "Well, if it was placing it again with them it was done the night that Mr.

Harmon came to see me;'' and then he says what we have already recited, that he specifically declined to place any price on the property, and declined to discuss any price. but told Harmon if he would bring him a written proposition he would accept or decline it. He not only positively declined to place a price upon his property and thereby list the same for sale with Harmon or his employers, but he specifically said he would do nothing but receive written propositions, and reserved the right to accept or reject them; and when thereafter the written proposition of Harmon was submitted to him he emphasized the fact that neither Harmon nor his employers were acting for him by explicity providing in his written acceptance that he should be under no obligation to pay commissions.

It is difficult to understand how the delicate and exacting relationship of principal and agent may be created in a transaction wherein it is distinctly understood that the agent is to have no compensation. On its face it does not demand that fidelity which ordinarily such a confidential relationship exacts, and which the law imposes upon the agent as one of the penalties growing out of that relationship. It would be manifestly unfair to impose upon one engaged in the real estate business the penalties which flow from such a delicate relationship of agency when it is understood from the start that he is to receive no compensation.

On the contrary in this situation we find the parties were dealing at arm's length, and there being no such relationship as charged, they might contract with each other with reference to the property, as might any other two persons. So far as this case is concerned, conceding that Harmon was acting for appellant, and conceding that this authority as their agent embraced the right to buy property for them and in their names, still the facts disclose that there was at the time no relationship of principal and agent between appellant and appellee. The case is no different from what it would be if appellant itself had signed the proposition to Kirwan, for it would have been only a dealing at arm's length between the parties wholly relieved from the obligations imposed by the relationship of principal and agent.

The case of Ripy v. Cronan, 131 Ky. 631, appears to be conclusive of this case. There it was held in an exhaustive opinion citing and analyzing the authorities, that a real estate broker will not be held liable for false

representations to an intending purchaser that the owner would not accept less than the price fixed by the broker, in the absence of a confidential relationship between the broker and the purchaser, or such fraud upon the part of the broker as prevented inquiry or investigation by the purchaser. In this case in the absence of such relationship between the broker and the seller the same principle must be applied; for there being no such relationship the broker himself had a right to deal directly with the seller and himself buy the seller's property and sell it to whomsoever he chose, and for whatever price he might place upon it.

It results from what we have said that appellant was entitled to the directed verdict for which it asked.

The judgment is reversed with directions to grant appellant a new trial, and for further proceedings consistent herewith.